# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

Martavious Cooper, )
    Plaintiff, )
)
v. ) 1:17cv1466 (AJT/TCB)
)
Sgt. Nichols, et al., )
    Defendants. )

## MEMORANDUM OPINION & ORDER

Martavious Cooper, a Virginia inmate proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Defendants Nichols and Dixon have filed a Motion to Dismiss the claims against them, as a well as a memorandum in support thereof. Dkt. Nos. 15-16. Plaintiff was provided the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), but has not filed any further documentation. For the reasons that follow, defendants' Motion to Dismiss will be granted in part and denied in part. This denial is without prejudice to defendants' ability to file a properly-supported Motion for Summary Judgment within thirty (30) days of the date of this Order.

### I. Background

The following allegations are assumed true for the purpose of ruling on defendants' Motion to Dismiss. On December 10, 2017, plaintiff was lying down in his cell when he was awoken by Officer Freeman ordering plaintiff's cellmate, G. Ortiz, to "pack up and cuff up." Dkt. No. 4, § IV. Ortiz refused to comply with the order, prompting Officer Freeman to request backup. Id. Officer Dixon arrived on scene and informed Ortiz that, if he did not comply with orders, prison staff would deploy OC spray into the cell. Id.

At this point, plaintiff requested to be removed from the cell prior to the use of the OC spray but was denied by Officer Dixon, who stated that plaintiff had to wait until Ortiz was handcuffed. Id. Ortiz at that time, "did not posed [sic] a threat" and simply requested to speak to a higher ranking official. Id. Officers Freeman and Dixon summoned Sergeant Nichols, who "came to the door [] pretending to talk to Ortiz and out of nowhere OC sprayed directly in the cell hitting" plaintiff and his cell mates. Id. Plaintiff struggled to breathe due to the fumes from the spray and was told by Sergeant Nichols to sit in the back of the cell and that, if he wanted to leave, he had to "remove [his] celly Ortiz," who had placed a mat in front of the cell door. Id. Ortiz told plaintiff not to touch him. Id.

Plaintiff asked the prison staff whether he would receive any punishment for moving Ortiz in order to receive his handcuffs and be removed from the cell. Id. Defendants stated that they did not care what plaintiff did so long as he removed the mat from the cell's entrance. Id. Plaintiff "tussled" with Ortiz in order to move him from the area. Id. "[A]fter 43 minutes of this incident," plaintiff and Moore[1] were handcuffed, and Ortiz moved to the back of the cell. Id. The officers then opened the cell door and "used [plaintiff and Moore] as a shield in rush[ing] Ortiz," causing plaintiff to hit his leg on an object, which caused him pain. Id.

Plaintiff and Moore were asked to "step in the gym" until officers could escort them to the medical unit. Id. Fifteen minutes later, plaintiff and Moore were taken to be evaluated, but medical staff "didn't do nothing [sic] but take [plaintiff's] blood pressure and send [him] back out of medical without documenting [his] injurys [sic]." Id.

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar

---

[1] Moore was plaintiff's other cellmate.

2

standard... under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F.Supp. 2d 641, 642 (E.D. Va. 1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id.

Where a complaint is filed by a prisoner acting pro se, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519 (1972). A pro se litigant is therefore not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106-07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979). For these reasons, a court's "power to summarily dismiss a prisoner's pro se complaint is limited." Figgins, 584 F.2d at 1347.

### III. Analysis

Plaintiff alleges that he endured defendants' use of excessive force and deliberate indifference to his serious medical needs. Defendants in their Motion to Dismiss argue that plaintiff's allegations could, if liberally construed, be taken as claims based on conditions of confinement or for failure to protect. Dkt. No. 16, pp. 9-12. Even a liberal reading of the

complaint does not support such a view. The sufficiency of plaintiff's pleadings will therefore not be analyzed under these frameworks.

1.  **Excessive Force**

Plaintiff states two potential factual bases to support a claim of excessive force: the use of OC spray on the occupants of his cell and the use of traditional physical force as defendants pursued and restrained his cellmate. In determining whether a complaint states an Eighth Amendment claim that a defendant used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9.

A defendant's motivation for his or her actions is not the only consideration in an excessive force claim, however. For two reasons, the extent of the injury suffered by the plaintiff is also relevant to the Eighth Amendment inquiry: first, because it may suggest whether the use of force could plausibly have been considered necessary in a particular situation, Whitley, 475 U.S. at 321, and second, because it may provide some indication of the amount of force actually applied. Wilkins v. Gaddy, 559 U.S. 34, 36 (2010). Generally speaking, the Eighth Amendment excludes from constitutional recognition de minimis uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that causes no discernible injury "almost certainly" fails to state a valid excessive force claim. Id. (internal citations omitted). Nonetheless, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose

4

his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

Defendants have moved to dismiss plaintiff's claim of excessive force, arguing that he has alleged only de minimis and temporary injuries and that he has failed to allege facts to suggest that defendants acted maliciously or sadistically. Review of the amended complaint, however, suggests otherwise. Indeed, plaintiff claims that, at the time of the deployment of the OC spray, plaintiff's cellmate Ortiz was not posing a threat and was merely having a conversation with defendant Nichols at the cell door. Dkt. No. 4, § IV. One could therefore infer that there was no need to "maintain or restore discipline" in the cell and that defendants acted maliciously and sadistically in using OC spray at that moment.[2]

As to the use of traditional physical force, plaintiff states that defendants' target, plaintiff's cellmate Ortiz, was in the back of the cell and that plaintiff and Moore were already handcuffed at the time defendants "used [plaintiff] as a shield to rush Ortiz." Id. One can reasonably infer that, with two of three occupants of the cell restrained and no evidence to suggest that Ortiz was acting in a threatening manner, defendants acted maliciously and sadistically in their use of force entering the cell and using plaintiff as a "shield." Accordingly, defendants' Motion to Dismiss will be denied as to plaintiff's claims of use of excessive force.

---

[2] The cases cited by defendants in support of the proposition that the use of pepper spray to quell a prison disturbance does not constitute malicious or sadistic behavior are not factually analogous to the case at bar. In Cruz-Droz v. Marquis, 2018 WL 1368907 (D.Conn. 2018), the plaintiff allegedly was pepper-sprayed after blocking the door with a mattress, retreating away from the door, and refusing to comply with orders. Here, plaintiff claims that he and his cellmates were sprayed "out of nowhere" when Sgt. Nichols approached the door "pretending to talk to Ortiz." Dkt. No. 4, § IV. Only after this incident did Ortiz block the door. Id. This sequence of events allows for an inference that defendants acted maliciously or sadistically.

2. **Deliberate Indifference**

In support of a claim for deliberate indifference to his serious medical needs, plaintiff alleges that medical department staff merely checked his blood pressure after he was exposed to OC spray and suffered a leg injury. To successfully assert such a claim under the Eighth Amendment, plaintiff must allege (1) the existence of a serious medical need, see e.g. Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (untreated bullet wound is sufficiently serious), and (2) show that defendants were deliberately indifferent to that need, demonstrating "actual intent or reckless disregard," Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

In this case, neither defendant worked as a medical professional in plaintiff's institution of confinement. "[A] medical treatment claim cannot be brought against non-medical personnel unless [the non-medical professional defendants] were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Angelone, 926 F.Supp. 69, 73 (W.D. Va. 1996) (citing Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990)). Plaintiff does not allege that either defendant was involved in the apparent failure to provide him adequate medical attention; he states that defendants simply escorted him and his cellmate to the medical facilities on-site. Because plaintiff does not allege that defendants were even tangentially involved in a denial of or interference with medical attention to plaintiff's injuries, defendants' Motion to Dismiss will be granted as to this claim.

3. **Qualified Immunity as to Use of OC Spray**

Defendants argue that they are entitled to qualified immunity as to the use of OC spray. Defendants may raise the defense at both the motion to dismiss and motion for summary judgment stages of litigation, Behrens v. Pelletier, 516 U.S. 299 (1996), but, "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage." Willingham

6

v. Crooke, 412 F.3d 553 (4th Cir. 2005) (citing Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003)). Indeed, a more fully developed factual record will aid in the accurate adjudication of the merits of defendants' qualified immunity claims, and, for this reason, defendants' motion to dismiss the OC spray excessive force claim against them based on qualified immunity will be denied, without prejudice to defendants' ability to raise the issue again at a later stage of proceedings, if appropriate. See Tobey v. Jones, 706 F.3d 379, 393-94 (4th Cir. 2013) (affirming the denial without prejudice of a qualified immunity defense at the motion to dismiss stage where plaintiff adequately alleged violations of his constitutional rights).

Accordingly, it is hereby

ORDERED that defendants' Motion to Dismiss [Dkt. No. 15] be and is GRANTED in part and DENIED in part. Plaintiff's deliberate indifference claims against defendants are dismissed. In all other respects, defendants' Motion to Dismiss is denied without prejudice to defendants' ability to submit a properly-supported Motion for Summary Judgment and to raise the issue of qualified immunity again, if appropriate; and it is further

ORDERED that defendants submit a properly-supported Motion for Summary Judgment within thirty (30) days of the entry of this ORDER. Defendants must provide a courtesy copy as required by instructions on the court's website found under Local Rules/Procedures Civil and Criminal Motions Procedures - Alexandria. This provision requires that the paper copy be filed one business day after the electronic filing. The courtesy copy should be sent to the attention of the Pro Se Office; and it is further

ORDERED that, within twenty-one (21) days of defendants filing their Motion for Summary Judgment the plaintiff file any reply, including counter-affidavits (sworn statements subject to the penalty of perjury), or other responsive material contesting the affidavits or records filed by defendants. See E.D. Va. Local Civ. R. 7(K); Roseboro v. Garrison, 528 F.2d 309 (4th

Cir. 1975). Any reply brief from defendants must be filed within fourteen (14) days and unless plaintiff explicitly requests additional time for filing additional materials, this civil action will be considered ripe for disposition twenty-one (21) days after defendants file a reply to plaintiff's opposition.

The Clerk is directed to send a copy of this Order to plaintiff and counsel of record for defendants.

Entered this 1st day of February, 2019.
Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge